Richard D. McCune (State Bar No. 132124)
rdm@mccunewright.com
Steven A. Haskins (State Bar No. 238865)
sah@mccunewright.com
Valerie L. Savran (State Bar No. 334190)
vls@mccunewright.com
**McCUNE LAW GROUP, APC**
3281 E. Guasti Road, Suite 100
Ontario, California 91761
Telephone: (909) 557-1250
Facsimile: (909) 557-1275

Emily J. Kirk (IL Bar No. 6275282)*
ejk@mccunewright.com
**McCUNE LAW GROUP, APC**
231 N. Main Street, Suite 20
Edwardsville, IL 62025
Telephone: (618) 307-6116
Facsimile: (618) 307-6161

*Pro Hac Vice* application to be submitted

Attorneys for Plaintiff Rex Lair_____
and the Putative Class

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REX LAIR, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., and DOES 1 through 5, inclusive,<br><br>Defendant. | Case No.: 5:23-cv-1345<br><br>**COMPLAINT FOR:**<br><br>1. Breach of Contract<br>2. Breach of the Implied Covenant of Good Faith and Fair Dealing<br>3. Unjust Enrichment<br>4. Money Had and Received<br>5. Conversion<br>6. Violation of the California Unfair Competition Law (Cal. Civ. Code §§ 17200, *et seq.*)<br>7. Violation of California False Advertising Act (Bus. & Prof. Code § 17500)<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

1.      Plaintiff Rex Lair, ("Plaintiff"), on behalf of himself and all other similarly situated California residents, brings this lawsuit against Defendant Bank of America, N.A. ("Defendant" or "Bank of America") on behalf of Bank of America's customers and the California public because Bank of America has breached its contracts and violated California consumer protection laws.  Bank of America does so by charging recipients of wire transfers fees on incoming transfers without properly disclosing such fees, a practice that violates the parties' contracts, federal law, and state law against unfair and deceptive practices.

2.      Bank of America is one of the rare banks in the industry that charges incoming wire transfer fees without disclosing such fees in its applicable contracts and disclosures. As such, customers do not know they are going to be charged these fees until after they receive an incoming wire deposit and the fee is assessed. Therefore, they are unable to take these fees into account when deciding how to receive money into their accounts. Bank of America's wire transfer fee not only breaches its agreements with accountholders, but it is an unfair and deceptive trade practice in the form of a hidden fee that unfairly tilts the competitive playing field to Bank of America's advantage.  As a result, Plaintiff seeks damages, injunctive relief, and other remedies as set forth herein.

## I      PARTIES

3.      Plaintiff Rex Lair is a resident and citizen of Victorville, California, and a Bank of America accountholder at all relevant times to this Complaint.

4.      Defendant Bank of America, N.A. is a national bank with its headquarters and principal place of business in Charlotte, North Carolina. It provides retail banking services to consumers, including Plaintiff and other similarly situated accountholders. Bank of America has over 6,000 branches spread over 38 states, employing over 200,000 individuals and holds over $3 trillion in assets, the second-largest bank (as measured by asset size) in the United States.

Class Action Complaint
Case No.

5.    Without limitation, Defendants DOES 1 through 5, include agents, partners, joint ventures, subsidiaries, and/or affiliates of Defendant and, upon information and belief, also own and/or operate Defendant's branch locations. As used herein, where appropriate, the term "Defendant" is also inclusive of Defendants DOES 1 through 5.

6.    Plaintiff is unaware of the true names of Defendants DOES 1 through 5. Defendants DOES 1 through 5 are thus sued by fictitious names, and the pleadings will be amended as necessary to obtain relief against Defendants DOES 1 through 5 when the true names are ascertained, or as permitted by law or the Court.

7.    There exists, and at all times herein mentioned existed, a unity of interest and ownership between the named defendants (including DOES) such that any corporate individuality and separateness between the named defendants has ceased, and that the named defendants are *alter egos* in that they effectively operate as a single enterprise, or are mere instrumentalities of one another.

8.    At all material times herein, each Defendant was the agent, servant, co-conspirator, and/or employer of each of the remaining defendants; acted within the purpose, scope, and course of said agency, service, conspiracy, and/or employment and with the express and/or implied knowledge, permission, and consent of the remaining defendants; and ratified and approved the acts of the other Defendants. However, each of these allegations are deemed alternative theories whenever not doing so would result in a contradiction with the other allegations.

9.    Whenever this Complaint references any act, deed, or conduct of Defendant, the allegation means that Defendant engaged in the act, deed, or conduct by or through one or more of its officers, directors, agents, employees, or representatives who was actively engaged in the management, direction, control, or transaction of Defendant's ordinary business and affairs.

10.    As to the conduct alleged herein, each act was authorized, ratified, or directed by Defendant's officers, directors, or managing agents.

-2-

Class Action Complaint
Case No.

## II    JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 under the Class Action Fairness Act of 2005 because: (i) there are 100 or more Class Members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because at least one plaintiff and one defendant are citizens of different States.

12.    Venue is proper in this District because Defendant maintains a significant physical presence in this District, transacts business in this District, and executed the unlawful policies and practices that constitute the subject of this action in this District.

## III    BACKGROUND

**A.    Bank of America Wire Services**

13.    One service Bank of America offers accountholders is to send and receive "wire transfers" in and out of their accounts. A wire transfer is an electronic transfer of funds via a specialized network developed and administered by banks around the world.[1] Senders generally pay fees to initiate the transaction at the remitting bank and provide the intended recipient's name, bank account number, and the amount they intend to transfer.[2] An automatic clearing house processes the resulting transfers, taking as long as two business days to settle.[3]

14.    A wire transfer is a relatively safe way to transfer large amounts of money between accounts without the need to handle and exchange cash. The bank acts as an intermediary, ensuring that the funds are sent to the appropriate accountholder at the receiving bank. Given the bank's intermediary role in the transaction, it is customary and expected for the sender of a wire transfer to pay a fee to the originating bank. Although they often don't, receiving banks *may* also charge a fee which is deducted from the total

---

[1] *See What Is a Wire Transfer? How it Works, Safety, and Fees*, Kagan Julia, March 31, 2023, https://www.investopedia.com/terms/w/wiretransfer.asp (last visited May 2, 2023).
[2] *Id.*
[3] *Id.*

Class Action Complaint
Case No.

amount received by the customer, as long as that fee is disclosed to accountholders. The originating and receiving banks generally disclose those fees to accountholders in a fee schedule, with the amount generally left to the banks' discretion. These fees can be significant, ranging from approximately $35 for domestic transfers and more for international transfers.[4] Many times the fees are so significant that accountholders may opt to consider alternative and less costly methods of transferring funds between parties and accounts.

### 1.    Assessment of Wire Transfer Fees

15.    Like other banks, Bank of America assesses wire transfer fees pursuant to a standardized agreement with all accountholders called the Deposit Agreement and Disclosures (the "Account Agreement"). The Bank of America Account Agreement provides that the accountholder "agrees to pay for our services in accordance with the fees that apply to your account and your deposit relationship with us."[5] Further, it states that accounts are "subject to the fees described in the Schedule of Fees that applies to your account."[6] It also states that the Personal Schedule of Fees is part of the binding contract between customers and the bank.[7]

16.    As such, Bank of America promised it would only charge disclosed fees in accordance with its contracts and disclosures.

17.    The Personal Schedule of Fees "lists the fees associated with your account and ways to avoid them when applicable."[8] The Schedule of Fees instructs accountholders to obtain details about fees from the "account descriptions and Other Account Fees and Services section" of the document.[9]

---

[4] *Id.*
[5] Account Agreement (November 2022), at 17, attached hereto as Exhibit 1.
[6] *Id.*
[7] *Id.*
[8] Personal Schedule of Fees, May 19, 2023, attached hereto as Exhibit 2,
[9] *Id.*

-4-

Class Action Complaint
Case No.

18.    With regard to wire transfers "incoming or outgoing," the Personal Schedule of Fees only states that the "fee varies."[10] This ambiguity alone renders it meaningless as a contract term.

19.    Bank of America has yet another contract that applies to accountholders called the Online Banking Service Agreement ("Online Agreement").  The Online Agreement governs the use of Bank of America's online or mobile banking services.  It includes a section on "ACH and Wire Transfers" and states that accountholders may "send and receive the following types of ACH and Wire transfers," including inbound and outbound ACH transfers and outbound domestic or international wire transfers.  The Agreement then lists the specific fee for each service.[11]  Notably, the fee for all inbound transfers listed is $0 for consumers, while outbound transfers range from $3.00 to $45.00 depending on whether the transfer is domestic or international and by ACH or wire.

20.    Inbound wire transfers are not specifically mentioned in what otherwise appears to be an exhaustive list of fees for transfers.  Accordingly, a reasonable customer would not think that an inbound wire transfer would be treated any differently than other inbound transfers that have a $0 fee for consumers, nor would they have any indication that they need to call the bank to inquire about a fee.[12]

21.    Compounding the problem even further, Bank of America offers an online FAQ section for consumers wishing to use its wire transfer services.[13] The website directs that consumers will be able to "review any fees and limits before completing your wire transfer in Online Banking."[14] Consumers are also directed that "transfer limits are also available" in Bank of America's Online Banking Service Agreement.[15]  The only reasonable interpretation of this language is that consumers will find all necessary

---

[10] *Id.*, at 13.
[11] *See* Online Banking Service Agreement, May 19, 2023, attached hereto as Exhibit 3.
[12] *Id.*
[13] *See* Wire Transfer FAQ's, attached hereto as Exhibit 4.
[14] *Id.*
[15] *Id.*

-5-

Class Action Complaint
Case No.

information about wire transfers in the Online Banking Service Agreement, which lists
no fee for incoming wire transfers.

22.    Moreover, consumers would have no reason to assume a fee would be
assessed for inbound wire transfers because federal law requires disclosure of all account
related fees.  Specifically, under Regulation DD, issued by the Consumer Financial
Protection Bureau ("CFPB") to implement the Truth in Savings Act of 1991, a financial
institution must disclose "the amount of any fee that may be imposed in connection with
the account (or an explanation of how the fee will be determined) and the conditions
under which the fee may be imposed." 12 CFR §1030.4. The purpose of this provision is
to "enable consumers to make informed decisions about accounts at depository
institutions." *Id.,* at §1030.1.

23.    Here, Bank of America has not offered any valid modification of the
governing account documents, nor did Plaintiff agree to modify its terms. The first time
Plaintiff became aware of the $15 incoming wire transfer fee was after Bank of America
charged the $15 fee and deducted it from Plaintiff's account.  The governing account
documents provided no indication that Bank of America assessed a specific fee for
inbound wire transfers or that they would be treated differently than the inbound transfers
subject to a $0 fee as listed in the Online Banking Service Agreement, thus preventing
any opportunity for consumers to evaluate whether they wanted to receive funds by wire
transfer or another less costly method of transfer.

24.    Accordingly, under no circumstances can Bank of America justify charging
an incoming wire transfer fee without disclosing the same to a recipient of funds by wire
transfer. Such an expensive, hidden fee is harmful to the consumer and advances no
purpose outside of pure profit motive. The sender of a wire transfer initiates the transfer,
and the originating bank facilitates the transfer. The receiving bank simply receives the
funds and deposits them in the recipient's account, without direction from the recipient.

25.    Therefore, it is not within a reasonable customer's expectations to incur a fee
from receiving wire transferred funds, because the recipient has not requested, initiated,

-6-

Class Action Complaint
Case No.

or originated any services. These expectations are ratified by the tangle of agreements described above, none of which provide notice or disclosure that a fee will be charged for incoming wire transfers.

**2.    Consumer Financial Protection Bureau and Federal Trade Commission Warn against Undisclosed "Junk Fees" as an Unfair and Deceptive Practice**

26.    The CFPB has defined junk fees as "exploitative, back-end, hidden, or excessive fees."[16]

27.    Recently, in an initiative to eliminate these types of unfair fees, the CFPB has noted that:

> Excessive and exploitative fees, whether predictable and transparent to the customer or not, can add up and pose significant costs to people, especially those with low wealth and income. Many Americans have experienced inflated or surprise fees that, however nominally voluntary, are not meaningfully avoidable or negotiable in the moment. These fees in consumer finance can take many forms: Penalty fees such as late fees, overdraft fees, non-sufficient funds (NSF) fees, convenience fees for processing payments, minimum balance fees, return item fees, stop payment fees, check image fees, fees for paper statements, fees to replace a card, fees for out-of-network ATMs, foreign transaction fees, ACH transfer fees, *wire transfer fees*, account closure fees, inactivity fees, fees to investigate fraudulent activity, ancillary fees in the mortgage closing process, and more. (emphasis added), [17]

28.    The Federal Trade Commission ("FTC") has similarly recognized the unfairness of junk fees, and the lack of correlation to any service that benefits the consumer.

29.    The FTC defines junk fees as "unnecessary, unavoidable, or surprise charges" and warns that "consumers can experience junk fee shock when companies

[16] Request for Information Regarding Fees Imposed by Providers of Consumer Financial Products or Services, Federal Register Vol. 87, No. 22 (February 2, 2022) (accessed online, https://www.govinfo.gov/content/pkg/FR-2022-02-02/pdf/2022-02071.pdf.) (last viewed May 3, 2023).
[17] *Id.*

-7-

unexpectedly tack on mystery charges they did not know about, consent to, or factor into the purchase."[18]

30.    The FTC chair has highlighted this problem, stating that, "[i]t's beyond frustrating to end up spending more than you budgeted because of random, arbitrary fees."[19]

31.    These undisclosed, hidden fees serve no legitimate economic purpose and simply add to the immense profit that financial institutions are already accumulating.

## IV    FACTUAL ALLEGATIONS AGAINST DEFENDANT

32.    At all times relevant to the allegations, Plaintiff has maintained a personal consumer bank account with Bank of America.

33.    On May 31, 2023, Plaintiff received an incoming wire transfer into his Bank of America account for $35,000, originating from Glendale Area Schools Credit Union. Despite being the recipient of the funds and making no request of Bank of America to perform any service, Plaintiff was assessed an undisclosed $15 fee when Bank of America deposited the funds into his account.

34.    Plaintiff was unaware of the fee on incoming wire transfers. Plaintiff did not contract with Bank of America to pay such a fee merely on the basis that the sender chose a specific method of transfer.

## V    CLASS ALLEGATIONS

35.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

36.    Plaintiff brings this case, and each of the respective causes of action, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

---

[18] Federal Trade Commission Explores Rule Cracking Down on Junk Fees, (October 20, 2022) (last viewed May 3, 2023).
[19] *Id.*

-8-

Class Action Complaint
Case No.

37.     The "Class" is composed of all California Bank of America personal accountholders who, during the applicable statute of limitation period through the date of class certification, were charged fees on incoming wire transfers.

38.     Excluded from the Classes are: 1) Bank of America, or any entity in which Bank of America has a controlling interest; 2) any parents, subsidiaries, affiliates, officers, or directors of Bank of America; 3) the Court, its employees, and their immediate family members; and 4) all employees of the law firm representing Plaintiff and the Class Members.

39.     This action has been brought and may be properly maintained on behalf of each member of the Class pursuant to Federal Rules of Civil Procedure, Rule 23(a), (b)(2), and (b)(3).

40.     **Numerosity** – The Class Members are so numerous that joining them in the same lawsuit would be impracticable. While the exact number of Class Members is presently unknown to Plaintiff and can only be determined through appropriate discovery, Plaintiff expects that the Class likely includes thousands of Bank of America accountholders.

41.     Bank of America maintains databases, and/or other documentation, of accountholder enrollments and account transactions. Therefore, its existing data can be used to ascertain those accountholders Bank of America has harmed through its practices.

42.     **Commonality** – This action involves common questions of law and fact. The questions of law and fact common to both Plaintiff and the Class Members include, but are not limited to, the following:

- Whether Bank of America contracted with accountholders sufficiently to charge a fee for incoming wire transfers.
- Whether Bank of America breached the implied covenant of good faith and fair dealing by, *inter alia,* charging an undisclosed fee for incoming wire transfers.
- Whether Bank of America was unjustly enriched.

Class Action Complaint
Case No.

- Whether Plaintiff and Class Members are entitled to restitution of funds unlawfully obtained.
- Whether Bank of America exercised unlawful dominion and control over funds belonging to Plaintiff and the Class Members.
- Whether Bank of America's undisclosed fee on incoming wire transfers is an unfair or unlawful practice pursuant to California Business & Professional Code Section 17200 (the "UCL").
- Whether Bank of America's undisclosed fee on incoming wire transfers is a violation of California False Advertising Act, §§ 17500, *et seq.*
- Whether Plaintiff and Class Members are entitled to damages, costs, or attorneys' fees from Bank of America.

43. **Typicality** – Plaintiff's claims are typical of the putative Class Members. Bank of America's wrongful conduct is substantially the same against Plaintiff and all Class Members because Bank of America uses uniform contract documents employing the same terms for all accountholders. Therefore, Bank of America's common treatment of all accountholders makes this case ripe for class certification.

44. **Adequacy** – Plaintiff will fairly and adequately protect the interests of Class Members. Plaintiff has retained competent counsel experienced in class action litigation, and specifically in class action cases against financial institutions. There are no material conflicts between the claims asserted by Plaintiff and the Class Members that would make class certification inappropriate. Assisted by counsel, Plaintiff will vigorously prosecute this action.

45. **Predominance and Superiority** – The matter is properly maintained as a class action because common questions of law or fact predominate over questions that may affect only individual Class Members. Further, the class action is superior to all other available methods for the fair and efficient adjudication of this matter. Because the injuries the individual Class Members have suffered are relatively small compared to the cost of potential litigation, the expense and burden of individual litigation would make it

-10-

virtually impossible to seek individual redress for Bank of America's wrongful conduct. Even if any individual person or group(s) of Class Members could afford individual litigation, it would be unduly burdensome to the courts in which such litigation would proceed. A class action is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions would create the risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant, while leading to repetitious trials involving the same common questions of fact and law. Plaintiff has identified no difficulty that would preclude its maintenance as a class action. Absent a class action, Plaintiff and the Class Members will continue to suffer losses, thereby allowing Bank of America to continue reaping the proceeds of its unlawful actions.

46.    No Class Member has an identifiable interest in individually controlling a separate action because Plaintiff's claims are typical of Class Members and he will adequately represent the Class. Plaintiff does not foresee significant difficulties in managing the class action because the issues in dispute are susceptible to class proof.

47.    Plaintiff anticipates issuing notice, setting forth the subject and nature of the instant action, to the proposed Class Members. Defendant's business records should be sufficient to obtain the necessary information for notice to be issued. To the extent that any further notices may be required, Plaintiff anticipates using additional media and/or mailings.

48.    Without class certification and the Court's determination of declaratory, injunctive, statutory and other legal questions within the class format, prosecution of separate actions by individual Class Members will risk:

- inconsistent or varying adjudications with respect to individual Class Members, in turn establishing incompatible standards of conduct for Defendant; or

Class Action Complaint
Case No.

- as a practical matter, adjudication with respect to individual Class Members would be dispositive to the claims of other accountholders, and thus substantially impair or impede their ability to protect their interests.

49.     Bank of America has acted or refused to act on grounds generally applicable to Class Members, thereby making appropriate final declaratory and injunctive relief with respect to the Class as a whole under Federal Rules of Civil Procedure, Rule 23(b)(2).

## FIRST CAUSE OF ACTION

## (Breach of Contract)

50.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

51.     Plaintiff and the Class Members entered into the governing account documents with Bank of America, including the Account Agreement, the Personal Fee Schedule, and the Online Banking Services Agreement. Bank of America drafted each of these uniform agreements, and they are binding on the parties.

52.     Bank of America did not contract with Plaintiff to permit assessment of an incoming wire transfer fee. At best, Bank of America only contracted to assess accountholders a fee when they initiated wire transfers from Bank of America to another bank as described in the Online Banking Services Agreement.

53.     The Account Agreement states that Bank of America will charge fees consistent with the Personal Fee Schedule. But the Personal Fee Schedule does not disclose a specific fee charge on incoming wire transfers.

54.     Further, Bank of America's Online Banking Service Agreement includes a section on "ACH and Wire Transfers" and states that accountholders may "send and receive the following types of ACH and Wire transfers," including inbound and outbound ACH transfers and outbound domestic and international wire transfers.  In that document, Bank of America charges no fees to consumers for inbound ACH transfers and offers no disclosure at all of any inbound wire transfer fees.

-12-

Class Action Complaint
Case No.

55.     As such, there is no contractual basis for the $15 incoming wire transfer fee Bank of America charged to Plaintiff's account.

56.     Bank of America has not legally modified or otherwise changed the governing account documents so as to incorporate the $15 incoming wire transfer fee.

57.     Plaintiff (and the Class Members) have performed all conditions, covenants, and promises they are required to perform in accordance with the terms and conditions of the account agreements, except for those they were prevented from performing, or which were waived or excused by Bank of America's uniform misconduct.

58.     Bank of America breached the terms of the governing account documents by, *inter alia*, assessing undisclosed wire transfer fees against the recipients of wire transfer funds.

59.      As a proximate result of Bank of America's breach, Plaintiff and the Class Members have been damaged in an amount equaling $15 (or any other amount charged by Bank of America) for each unlawfully assessed fee on an inbound wire transfer, amounting to a sum to be proven at trial.

## SECOND CAUSE OF ACTION

### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

60.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

61.     Plaintiff and each of the Class Members entered into governing account documents, including an Account Agreement, Personal Fee Schedule, and Online Banking Services Agreement, with Bank of America. The uniform governing account documents were drafted by Bank of America and are binding on all parties.

62.     Good faith is an element of every contract. Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Thus, the parties to a contract are mutually obligated to

-13-

comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms, constitute examples of bad faith in the performance of contracts.

63.    The material terms of the governing account documents therefore included the implied covenant of good faith and fair dealing, whereby Bank of America covenanted that it would, in good faith and in the exercise of fair dealing, deal with Plaintiff and each Class Member fairly and honestly and do nothing to impair, interfere with, hinder, or potentially injure Plaintiff's and the Class Members' rights and benefits under the contracts.

64.    Plaintiff and the Class Members have performed all conditions, covenants, and promises required by each of them on their part to be performed in accordance with the terms and conditions of the contracts, except for those they were prevented from performing or which were waived or excused by Bank of America's misconduct.

65.    Bank of America has breached the implied covenant of good faith and fair dealing by, *inter alia*, charging undisclosed incoming wire transfer fees to Plaintiff and the Class Members.

66.    As a proximate result of Bank of America's breach of the implied covenant of good faith and fair dealing, Plaintiff and the Class Members have been damaged in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
### (Unjust Enrichment)

67.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

68.    As a result of the wrongful misconduct alleged above, Bank of America unjustly received profits at the expense of Plaintiff and the Class Members.

69.    Because Plaintiff and the Class Members paid incoming wire transfer fees assessed by Bank of America, Plaintiff and the Class Members have conferred a benefit upon Bank of America, albeit undeservingly. Bank of America has knowledge of this

-14-

benefit, as well as the wrongful circumstances under which it was conveyed, and yet has voluntarily accepted and retained the benefit conferred. Should it be allowed to retain such funds, Bank of America would be unjustly enriched. Therefore, Plaintiff and the Class Members seek relief as set forth in the Prayer below.

## FOURTH CAUSE OF ACTION

### (Money Had and Received)

70.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

71.    Bank of America has obtained money from Plaintiff and the Class Members by the exercise of undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact.

72.    As a result, Bank of America has in its possession money which, in equity, belongs to Plaintiff and the Class Members, and thus, this money should be refunded to Plaintiff and the Class Members. Therefore, Plaintiff and the Class Members seek relief as set forth in the Prayer below.

## FIFTH CAUSE OF ACTION

### (Conversion)

73.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

74.    As a result of the wrongful misconduct alleged above, Bank of America received profits to which it was not entitled at the expense of Plaintiff and the Class Members.

75.    By retaining these profits for itself, Bank of America has maintained wrongful possession and control over Plaintiff's and the Class Members' property, inconsistent with their rights.

76.    The exact amounts to which Plaintiff and Class Members are entitled to are specific and identifiable.

-15-

Class Action Complaint
Case No.

77.     Plaintiff and the Class Members have been harmed by Bank of America's wrongful exercise and dominion over their personal property.

## SIXTH CAUSE OF ACTION

### (Violation of California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

78.     The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

79.     Bank of America's conduct as described herein violates the UCL, codified at California Business and Professions Code § 17200, *et seq*. The UCL prohibits, and provides civil remedies for unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the California Legislature framed the UCL's substantive provisions in broad, sweeping language. By defining unfair competition to include any "any unlawful, unfair or fraudulent business act or practice," the UCL sweeps within its scope acts and practices that either violate state law, or may not be specifically proscribed by law but unfairly impact market competition for either competitors or consumers.

80.     The UCL expressly provides for injunctive relief to protect the public. A private litigant may also obtain restitution of money paid because of the unfair acts alleged in the complaint.

81.     Bank of America's conduct violates the UCL's "unlawful" prong, insofar as Bank of America has violated the California False Advertising Act, Business & Professions Code § 17500. Section 17500 prohibits anyone from making a statement about goods or services that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Here, Bank of America provided misleading information to Plaintiff and Class Members regarding its true fee practices. Bank of America's misrepresentations and omissions about its fee

-16-

policies related to incoming wire transfers would have been misleading to the reasonable consumer.

82. Bank of America's conduct also violates the "unlawful" prong, insofar as Bank of America has violated 12 CFR § 1030.4, which requires disclosure of "the amount of any fee that may be imposed in connection with the account (or an explanation of how the fee will be determined) and the conditions under which the fee may be imposed." Bank of America both fails to disclose the amount of the incoming wire transfer fee or the conditions under which the fee is imposed in its contracts in violation of this provision.

83. As further alleged herein, Bank of America's conduct also violates the UCL's "unfair" prong. Bank of America's conduct violates the UCL, insofar as Bank of America's misrepresentations and omissions regarding its fees on incoming wire transfers have no legitimate business or economic need or rationale.

84. The harm and adverse impact of Bank of America's conduct on the Class Members and the general public was neither outweighed nor justified by legitimate reasons, justifications, or motives. The harm to Plaintiff and Class Members arising from Bank of America's unfair practices outweighs the utility, if any, of its practices.

85. Bank of America's unfair business practices are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious to Plaintiff and the Class Members, and the general public. Its conduct was substantially injurious because it has forced consumers to pay improper, abusive, and/or unconscionable fees.

86. As a direct and proximate result of Bank of America's UCL violations, Plaintiff and Class Members have been assessed unfair, improper, and illegal incoming wire transfer fees with those funds removed from their account, and Bank of America has received, or will receive, income, profits, and other benefits, which it would not have received if it had not engaged in these violations.

87. Absent public injunctive relief prohibiting Bank of America from assessing such fees and/or misrepresenting and omitting material information concerning its fee

-17-

policies, Plaintiff, Class Members, future accountholders, and the general public will continue to suffer as a result of Bank of America's conduct.

88.    Plaintiff requests that he be awarded all other relief as may be available by law, pursuant to California Business & Professions Code § 17203. In restitution, Plaintiff seeks the return of all improperly charged incoming wire transfer fees within the statute of limitations period. Plaintiff further seeks a public injunction enjoining Bank of America from charging similar fees to other accountholders.

## SEVENTH CAUSE OF ACTION

### (Violation of California False Advertising Act, §§ 17500, *et seq.*)

89.    The preceding allegations are incorporated by reference and re-alleged as if fully set forth herein.

90.    Bank of America has violated the California False Advertising Act, §§ 17500, *et seq.*

91.    Section 17500 prohibits anyone from making a statement about goods or services that is "untrue or misleading, and which if known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

92.    Bank of America misrepresented its true fee policies and failed to accurately disclose that Plaintiff and Class Members could be charged $15 fees for incoming wire transfers.

93.    These misrepresentations were uniformly disseminated to Plaintiff and the Class Members through Bank of America's contracts and other disclosures.

94.    Bank of America's misrepresentations and omissions about its true fee policies related to incoming wire transfers would have been misleading to the reasonable consumer, and were misleading to Plaintiff and the Class Members.

95.    As a direct and proximate result of Bank of America's misrepresentations regarding its true fee policies, including fees related to incoming wire transfers, Plaintiff and the Class Members have paid and/or will pay fees on incoming wire transfers, and thereby have suffered actual loss of money and may similarly suffer in the future if the

actions are allowed to continue. Furthermore, absent injunctive relief forcing Bank of America to disgorge itself of its ill-gotten gains, Plaintiff and the Class Members will continue to suffer from and be exposed to Bank of America's conduct.

## VI     PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class pray for judgment as follows:

      a.     for an order certifying this action as a class action;

      b.     for damages as a result of the breach of contract;

      c.     for an order requiring Bank of America to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

      d.     for injunctive relief barring Bank of America from continuing to charge incoming wire transfer fees;

      e.     for civil penalties and statutory damages, as appropriate;

      f.     for costs;

      g.     for pre-judgment and post-judgment interest as provided by law;

      h.     for attorneys' fees under the common fund doctrine and all other applicable law; and

      i.     for such other relief as the Court deems just and proper.

Dated: July 10, 2023           Respectfully Submitted,

                        **McCUNE LAW GROUP, APC**

                    By: <u>*/s/* Richard D. McCune</u>
                       Richard D. McCune (State Bar No. 132124)
                       rdm@mccunewright.com
                       Steve Haskins (State Bar No. 238865)
                       sah@mccunewright.com
                       Valerie L. Savran (State Bar No. 334190)
                       vls@mccunewright.com
                       Emily J. Kirk (IL Bar No. 6275282)*
                       ejk@mccunewright.com
                       **Pro Hac Vice** application to be submitted

                       Attorneys for Plaintiff Rex Lair
                       and the Putative Class

-19-

# DEMAND FOR JURY TRIAL

Plaintiff and the Class Members demand a trial by jury on all issues so triable.

Dated: July 10, 2023

**McCUNE LAW GROUP, APC**

*/s/* Richard D. McCune

Richard D. McCune (State Bar No. 132124)
rdm@mccunewright.com
Steve Haskins (State Bar No. 238865)
sah@mccunewright.com
Valerie L. Savran (State Bar No. 334190)
vls@mccunewright.com
Emily J. Kirk (IL Bar No. 6275282)*
ejk@mccunewright.com
**Pro Hac Vice* application to be submitted

Attorneys for Plaintiff Rex Lair
and the Putative Class

-20-