LAURA A. STOLL (SBN 255023)
*LStoll@goodwinlaw.com*
**GOODWIN PROCTER** LLP
601 South Figueroa Street, 41st Floor
Los Angeles, California  90017
Tel.: +1 213 426 2500
Fax: +1 213 623 1673

Attorneys for Defendant
BANK OF AMERICA, N.A.

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| REX LAIR, individually, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., and DOES 1 through 5, inclusive,<br><br>Defendants. | Case No. 5:23-cv-1345-WLH-SHK<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>Date:    October 27, 2023<br>Time:    1:30 PM<br>Dept:    9B<br>Judge:   Hon. Wesley L. Hsu<br><br>Filed/Lodged Concurrently with:<br>1.  [Proposed] Order |

## NOTICE OF MOTION AND MOTION TO DISMISS

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD**:

Please take notice that on October 27, 2023 at 1:30 p.m. or as soon thereafter as the matter can be heard in Courtroom 9B, 9th Floor, of the United States District Court located at 350 W. 1st Street, Los Angeles, California 90012, before the Honorable Judge Wesley L. Hsu, Defendant Bank of America, N.A. ("BANA"), will, and hereby does, move this Court for an order dismissing all claims asserted against it by Plaintiff Rex Lair in his Complaint, on behalf of himself and all others similarly situated, for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) and for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) with respect to his claims for prospective injunctive relief.

The Motion is based upon this Notice and the Memorandum in support of this Motion, which are filed concurrently herewith, the complete file and records of this action, other documents of which this Court may take judicial notice, and such other oral and documentary evidence which this Court allows for presentation at the time of hearing.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place by teleconference on August 31, 2023 and during which the parties thoroughly discussed the substance and potential resolution of the Motion.

1   Dated:    September 7, 2023          Respectfully submitted,

2

3                                         By: /s/ *Laura A. Stoll*

4                                              LAURA A. STOLL
                                               *LStoll@goodwinlaw.com*
5                                              **GOODWIN PROCTER** LLP
                                               601 S. Figueroa Street, 41st Flr.
6                                              Los Angeles, CA  90017
                                               Tel.:  +1 213 426 2500
7                                              Fax: + 1 213 623 1673

8
                                          Attorneys for Defendant
9                                         BANK OF AMERICA, N.A.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  PLAINTIFF'S BREACH OF CONTRACT CLAIM (COUNT I) SHOULD BE DISMISSED BECAUSE IT IS FORECLOSED BY THE EXPRESS TERMS OF THE ACCOUNT DOCUMENTS ................... 4

II. PLAINTIFF'S REMAINING CLAIMS ARE MERELY ATTEMPTS TO REHASH THE FAILED BREACH OF CONTRACT CLAIM AND MUST BE DISMISSED ................................................................. 7

III. PLAINTIFF'S REMAINING CLAIMS FAIL FOR ADDITIONAL REASONS .......................................................................................... 10

    A.  Plaintiff Does Not State a Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II) ........................ 10

    B.  Plaintiff Does Not State a Claim for Unjust Enrichment (Count III) ................................................................................................. 11

    C.  Plaintiff Does Not State a Claim for Money Had and Received (Count IV) ...................................................................................... 12

    D.  Plaintiff Does Not State a Claim for Conversion (Count V) ............. 13

    E.  Plaintiff Does Not State a Claim Under the UCL (Count VI) or the FAL (Count VII) ...................................................................... 14

        1.  Plaintiff Has An Adequate Remedy at Law ............................. 15

        2.  Plaintiff Has Not Properly Pled a Claim Under Any Prong of the UCL or the FAL ............................................................. 16

CONCLUSION .............................................................................................. 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Banga v. Allstate Ins. Co.*,
  2011 WL 794847 (E.D. Cal. Mar. 1, 2011) ........................................................ 4

*Bates v. United Parcel Serv., Inc.*,
  511 F.3d 974 (9th Cir. 2007) ............................................................................ 19

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................................................... 3

*Bosinger v. Belden CDT, Inc.*,
  358 F. App'x 812 (9th Cir. 2009) ..................................................................... 11

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
  824 F.3d 1156 (9th Cir. 2016) ............................................................................ 9

*Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*,
  222 Cal. App. 3d 1371 (1990) ............................................................................ 7

*Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*,
  2 Cal. 4th 342 (1992) .......................................................................................... 7

*Chavez v. Bank of America Corp.*,
  2012 WL 1594272 (N.D. Cal. May 4, 2012) .................................................... 14

*Chavez v. Carmax Auto Superstores Cal., LLC*,
  2013 WL 12474697 (C.D. Cal. Sept. 10, 2013) ............................................... 17

*Compliance Servs. of America, LLC v. Houser Holdings, LLC*,
  2013 WL 4169119 (N.D. Cal. Aug. 9, 2013) .................................................... 13

*Davis v. HSBC Bank Nev., N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ..................................................................... 18-19

*Durkee v. Bank of America, N.A.*,
  2020 WL 4500607 (S.D. Cal. Aug. 5, 2020) ................................................ 9, 14

*Ebner v. Fresh*,
  838 F.3d 958 (9th Cir. 2016) ....................................................................... 17-18

*In re Facebook PPC Adver. Litig.*,
   709 F. Supp. 2d 762 (N.D. Cal. 2010).................................................................. 8

*Farmers Ins. Exch. v. Zerin*,
   53 Cal. App. 4th 445 (1997) ............................................................................... 14

*Forever 21, Inc. v. Nat'l Stores Inc.*,
   2014 WL 722030 (C.D. Cal. Feb. 24, 2014) ...................................................9-10

*Freeman v. ABC Legal Servs., Inc.*,
   877 F. Supp. 2d 919 (N.D. Cal. 2012)................................................................ 19

*Friedman v. U.S. Bank Nat'l Ass'n*,
   2016 WL 3226005 (C.D. Cal. June 6, 2016)........................................................ 9

*Gilbert v. Chase Home Fin. LLC*,
   2013 WL 3968229 (E.D. Cal. July 31, 2013) .................................................... 13

*Gomez v. Jelly Belly Candy Co.*,
   2017 WL 8941167 (C.D. Cal. Aug. 18, 2017) ................................................... 16

*Gutierrez v. Wells Fargo Bank N.A.*,
   622 F. Supp. 2d 946 (N.D. Cal. 2009)................................................................ 14

*Guz v. Bechtel Nat'l, Inc.*,
   24 Cal. 4th 317 (2000)........................................................................................ 11

*Hadley v. Kellogg Sales Co.*,
   243 F. Supp. 3d 1074 (N.D. Cal. 2017)........................................................ 16, 17

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
   896 F.2d 1542 (9th Cir. 1989) ............................................................................. 4

*Janda v. T-Mobile, USA, Inc.*,
   2009 WL 667206 (N.D. Cal. Mar. 13, 2009) ..................................................... 19

*Kahn Creative Partners, Inc. v. Nth Degree, Inc.*,
   2011 WL 1195680 (C.D. Cal. Mar. 29, 2011) ................................................... 12

*Ketayi v. Health Enrollment Grp.*,
   516 F. Supp. 3d 1092 (S.D. Cal. 2021) .............................................................. 19

*Khomich v. Bank of America, N.A.*,
   2011 WL 1087858 (E.D. Cal. Mar. 23, 2011) ................................................... 12

NOTICE OF MOTION AND MOTION TO DISMISS

*Kumar v. Ally Fin. Inc.*,
2022 WL 16962283 (C.D. Cal. Oct. 17, 2022) .................................................. 16

*Landucci v. State Farm Ins. Co.*,
65 F. Supp. 3d 694 (N.D. Cal. 2014)...................................................................7

*Langan v. United Servs. Auto. Ass'n*,
69 F. Supp. 3d 965 (N.D. Cal. 2014)...................................................................4

*Larin v. Bank of America, N.A.*,
617 F. App'x 651 (9th Cir. 2015)...................................................................... 19

*Lawrence v. Bank of America*,
163 Cal. App. 3d 431 (1985) ............................................................................ 14

*Lenk v. Monolithic Power Sys., Inc.*,
2015 WL 7429498 (N.D. Cal. Nov. 23, 2015)................................................. 11

*Lit'l Pepper Gourmet, Inc. v. Airgas USA, LLC*,
2019 U.S. Dist. LEXIS 203437 (S.D. Cal. Nov. 21, 2019) ............................. 10

*Lopez v. Wash. Mut. Bank, F.A.*,
2010 WL 1558938 (E.D. Cal. Apr. 19, 2010)............................................. 11, 12

*Lum v. Merlin Ents. Grp. U.S. Holdings Inc.*,
2023 WL 2583307 (S.D. Cal. Mar. 20, 2023)....................................................9

*In re MacBook Keyboard Litig.*,
2020 WL 6047253 (N.D. Cal. Oct. 13, 2020)................................................... 16

*Malcolm v. JPMorgan Chase Bank, N.A.*,
2010 WL 934252 (N.D. Cal. Mar. 15, 2010) ......................................................7

*Mar Partners 1, LLC v. Am. Home Mortg. Servicing, Inc.*,
2011 WL 11501 (N.D. Cal. Jan. 4, 2011) ........................................................ 13

*McBride v. Boughton*,
123 Cal. App. 4th 379 (2004)........................................................................... 13

*Mendoza v. Amalgamated Transit Union Int'l*,
30 F.4th 879 (9th Cir. 2022).................................................................................4

*Moss v. Infinity Ins. Co.*,
197 F. Supp. 3d 1191 (N.D. Cal. 2016)............................................................ 15

*Motivo Eng'g, LLC v. Black Gold Farms*,
   2022 WL 3013227 (C.D. Cal. June 27, 2022)...................................... 9

*Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda Cty.*,
   9 Cal. 5th 279 (Cal. 2020) ................................................................. 15

*Nikoopour v. Ocwen Loan Servicing, LLC*,
   2018 WL 3007918 (S.D. Cal. June 14, 2018) .................................16-17

*Nuvo Rsch. Inc. v. McGrath*,
   2012 WL 1965870 (N.D. Cal. May 31, 2012) .................................... 10

*Paracor Fin., Inc. v. GE Cap. Corp.*,
   F.3d 1151 (9th Cir. 1996) ..................................................................... 8

*Quattrocchi v. Allstate Indem. Co.*,
   2018 WL 347779 (E.D. Cal. Jan. 9, 2018) ......................................... 18

*Racine & Laramie, Ltd., Inc. v. Dep't of Parks & Recreation*,
   11 Cal. App. 4th 1026 (1992)............................................................. 11

*Ramirez v. Baxter Credit Union*,
   2017 WL 118859 (N.D. Cal. Jan. 12, 2017) ........................................ 6

*Rodrigues v. Alliant Credit Union*,
   2022 WL 2390999 (N.D. Cal. July 1, 2022) ...................................... 17

*Roots Ready Made Garments Co., W.L.L. v. Gap, Inc.*,
   405 F. App'x 120 (9th Cir. 2010)....................................................... 18

*Rutherford Holdings, LLC v. Plaza Del Rey*,
   223 Cal. App. 4th 221 (2014)............................................................... 8

*Schertzer v. Bank of America, N.A.*,
   489 F. Supp. 3d 1061 (S.D. Cal. 2020) ......................................*passim*

*Schroeder v. United States*,
   569 F.3d 956 (9th Cir. 2009) .............................................................. 15

*Slaught v. Bencomo Roofing Co.*,
   25 Cal. App. 4th 744 (1994)................................................................. 6

*Sonner v. Premier Nutrition Corp.*,
   971 F.3d 834 (9th Cir. 2020) .............................................................. 15

*Starr v. Baca*,
  652 F.3d 1202 (9th Cir. 2011) ............................................................... 3

*Sybersound Recs., Inc. v. UAV Corp.*,
  517 F.3d 1137 (9th Cir. 2008) ............................................................ 10

*United States v. Ritchie*,
  342 F.3d 903 (9th Cir. 2003) ...............................................................3-4

*W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*,
  498 F. Supp. 3d 1233 (C.D. Cal. Oct. 27, 2020) ................................... 3

*Waller v. Truck Ins. Exch., Inc.*,
  11 Cal. 4th 1 (1995) ................................................................................ 6

*Williams v. Apple, Inc.*,
  2020 WL 6743911 (N.D. Cal. Nov. 17, 2020) ..................................... 15

*Williams v. Gerber Prods. Co.*,
  552 F.3d 934 (9th Cir. 2008) ............................................................... 19

*Zamora v. Solar*,
  2016 WL 3512439 (C.D. Cal. June 27, 2016) ....................................... 7

**Statutes**

California False Advertising Law ("FAL") ........................................... *passim*

California Unfair Competition Law ("UCL") ........................................ *passim*

Truth In Savings Act ("TISA") ............................................................... 17

**Other Authorities**

12 C.F.R. § 1030.4(b)(4) ......................................................................... 17

Fed. R. Civ. P. 12(b)(1) ..................................................................... 1, 19

Fed. R. Civ. P. 12(b)(6) ............................................................................ 1

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Bank of America, N.A. ("BANA") respectfully submits this Memorandum of Law in support of its Motion to Dismiss, pursuant to Fed. R. Civ. P. 12(b)(6) and 12(b)(1).

## INTRODUCTION

Plaintiff Rex Lair ("Plaintiff") brings this California putative class action challenging BANA's assessment of a $15.00 fee for an incoming wire transfer to his checking account.  The crux of Plaintiff's claim is that BANA's "governing account documents provided no indication that Bank of America assessed a specific fee for inbound wire transfers" and therefore "under no circumstances can Bank of America justify charging an incoming wire transfer fee."  ECF No. 1 ("Compl.") ¶¶ 23-24. Plaintiff asserts claims for (1) breach of contract, (2) breach of the implied covenant of good faith and fair dealing, (3) unjust enrichment, (4) money had and received, (5) conversion, (6) violation of California's Unfair Competition Law ("UCL"), and (7) violation of California's False Advertising Law ("FAL").

Despite Plaintiff's inflammatory rhetoric, the Complaint mischaracterizes the Account Documents at issue.[1]  The Account Documents, upon which Plaintiff relies, show that BANA disclosed, in multiple provisions and documents, that incoming wire transfers are subject to fees.  The Account Documents further disclose that this fee can vary and notify accountholders how they can determine the exact amount of

---

[1] Plaintiff's relationship with BANA is governed in part by the Deposit Agreement and Disclosures ("Deposit Agreement") and accompanying Personal Schedule of Fees (collectively, the "Account Documents").  Compl. ¶ 15, Ex. 1 at 2 ("This Deposit Agreement and Disclosures, the applicable Schedule of Fees, the signature card and other account opening documents for your account are part of the binding contract between you and us.").  Plaintiff relies upon and attaches the Deposit Agreement (effective November 10, 2022) and Personal Schedule of Fees (effective May 19, 2023), to the Complaint.  Compl., Exs. 1-2.  However, there are at least 11 other versions of the Deposit Agreement and 11 other versions of the Personal Schedule of Fees that were in effect during the relevant time period.  These Deposit Agreements and Personal Schedule of Fees are identical to the versions Plaintiff attaches to the Complaint with respect to the relevant language discussed herein.  As such, BANA will refer to the attached Deposit Agreement and Personal Schedule of Fees when citing applicable language.

the fee for any particular transaction.  None of Plaintiff's claims stand in light of these disclosures, and each fails for a myriad of other reasons.

First, Plaintiff's breach of contract claim fails because BANA's Account Documents expressly permit incoming wire transfer fees and Plaintiff identifies no contractual provision to the contrary.  Second, Plaintiff's remaining claims all fail because they allege nothing more than a breach of contract and so are mere regurgitations of the failed contract claim.

Third, Plaintiff fails to state a claim as to any of those remaining claims for a myriad of other reasons including, fundamentally, his failure to plausibly allege any fraudulent, coercive, menacing, threatening, wrongful, unlawful, unfair or deceptive conduct with respect to BANA's assessment of incoming wire transfer fees.

Finally, even if Plaintiff had stated a claim under the UCL or the FAL, Plaintiff's claim for prospective injunctive relief must be dismissed for lack of standing.

Accordingly, BANA requests dismissal of the Complaint in its entirety, with prejudice.

## FACTUAL BACKGROUND

Plaintiff, a California resident, maintains a personal checking account with BANA.  Compl. ¶¶ 3, 32.  Plaintiff alleges that he received an incoming wire transfer on May 31, 2023, in the amount of $35,000, and was charged a corresponding $15.00 incoming wire transfer fee.  *Id.* ¶ 33.  Plaintiff admits that BANA's Personal Schedule of Fees discloses that the "fee varies" for "incoming" wire transfers.  *Id.* ¶ 18 (citing Compl., Ex. 2 at 13).  The Personal Schedule of Fees further discloses that BANA "may change the fees for wire transfers at any time" and that accountholders can "[v]isit a financial center or call [BANA] at the number on [their] statement for current fees."  *Id.*

The Deposit Agreement attached to the Complaint further discloses that "[BANA] may charge fees for sending or receiving a funds transfer," that it "may

deduct [its] fees from [the] account or the amount of the transfer," and that "[f]or current fees, [a cardholder can] call [BANA] at the number for customer service on [the] statement or ask a financial center associate."   Compl., Ex. 1 at 67. Furthermore, the Deposit Agreement states that cardholders "agree to pay for [BANA's] services in accordance with the fees that apply to [their] account and [their] deposit relationship with [BANA]," that "[t]he Personal Schedule of Fees lists account fees that apply to [BANA's] personal deposit accounts," and that "[BANA] may change these fees at any time without notice." *Id.* at 17.

Notwithstanding these disclosures, Plaintiff alleges in his Complaint that BANA "breached its contracts and violated California consumer protection laws" when it "charg[ed] recipients of wire transfers fees on incoming transfers without properly disclosing such fees." Compl. ¶ 1.  Plaintiff seeks to certify a nationwide class of "all California Bank of America personal accountholders who, during the applicable statute of limitation period through the date of class certification, were charged fees on incoming wire transfers." *Id.* ¶ 37.

## LEGAL STANDARD

"To survive a motion to dismiss, a plaintiff must allege 'enough facts to state a claim to relief that is plausible on its face.'" *W. Coast Hotel Mgmt., LLC v. Berkshire Hathaway Guard Ins. Cos.*, 498 F. Supp. 3d 1233, 1237 (C.D. Cal. Oct. 27, 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff must plead "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.  And, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  In ruling on a 12(b)(6) motion for failure to state a claim, the Court may consider the complaint's allegations, "documents incorporated by reference in the complaint, or matters of judicial notice." *United States v. Ritchie*, 342 F.3d 903,

908 (9th Cir. 2003).  However, "where the complaint incorporates exhibits, the court should ignore the allegations in the complaint if they are in conflict with facts set forth in the exhibit."  *Banga v. Allstate Ins. Co.*, 2011 WL 794847, at *6 (E.D. Cal. Mar. 1, 2011) (citing *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989)).

## **ARGUMENT**

### **I.**     **Plaintiff's Breach of Contract Claim (Count I) Should Be Dismissed Because It Is Foreclosed By The Express Terms of the Account Documents.**

Plaintiff's claim for breach of contract rests entirely on the premise that BANA's "governing account documents provided no indication that Bank of America assessed a specific fee for inbound wire transfers" and therefore BANA "did not contract with Plaintiff to permit assessment of an incoming wire transfer fee." Compl. ¶¶ 23, 52.  To plausibly state a breach of contract claim, a plaintiff must allege both "the material terms of a specific contract" and "which obligations a defendant allegedly breached." *Langan v. United Servs. Auto. Ass'n*, 69 F. Supp. 3d 965, 980 (N.D. Cal. 2014).  Plaintiff's breach of contract claim fundamentally fails because incoming wire transfer fees are allowed under the express language of the Account Documents.

Plaintiff does not dispute that the Account Documents govern his claims, and he attaches them to the Complaint.  Compl ¶ 15; *id.* Exs. 1, 2.[2]  The Account Documents permit incoming wire transfer fees and disclose that "[w]e may charge fees for sending or receiving a funds transfer," that "[w]e may deduct our fees from your account or from the amount of the transfer," and that for "Wire Transfers, Incoming or Outgoing (U.S. or International)" the "Fee varies." Compl., Ex. 1 at 67; *id.*, Ex. 2 at 13.  This language makes clear that BANA may charge an incoming wire

---

[2] This Court may take judicial notice of and consider the Account Documents attached as exhibits to the Complaint in deciding this motion.  *See Mendoza v. Amalgamated Transit Union Int'l*, 30 F.4th 879, 884 (9th Cir. 2022).

1    transfer fee.  BANA further directs accountholders to call customer service or visit a
2    financial center to determine the exact amount of the fee because the amounts vary
3    based on the type of wire transfer (*e.g.*, incoming, outgoing, domestic, or
4    international).  Compl., Ex. 1 at 67; *id.*, Ex. 2 at 13.

5          In an attempt to circumvent this clear language, Plaintiff baselessly alleges that
6    BANA "did not contract with Plaintiff to permit assessment of an incoming wire
7    transfer fee" because "[t]he [Deposit] Agreement states that [BANA] will charge fees
8    consistent with the Personal Fee Schedule" and "the Personal Fee Schedule does not
9    disclose a specific fee charge on incoming wire transfers."  Compl. ¶¶ 52-53.  But as
10   Plaintiff himself admits, the Personal Schedule of Fees *did* disclose that incoming
11   wire transfers were subject to fees.  *See* Compl. ¶ 18 (alleging that "[w]ith regard to
12   wire transfers 'incoming or outgoing,' the Personal Schedule of Fees [] states that the
13   'fee varies.'") (citing Compl., Ex. 2 at 13).  BANA therefore expressly had the
14   authority to assess fees for incoming wire transfers.

15         In a further attempt to avoid the clear terms of the Account Documents,
16   Plaintiff alleges that another document available on BANA's website, the Online
17   Banking Agreement, does not specifically mention incoming wire transfer fees "in
18   what otherwise appears to be an exhaustive list of fees for transfers."  Compl. ¶¶ 19-
19   20.  This allegation fails to state a claim for multiple independent reasons.

20         First, Plaintiff identifies no provision in the Online Banking Agreement stating
21   (or even indicating) that the Agreement includes "an exhaustive list of fees for
22   transfers."   Nor can he, because the Online Banking Agreement is limited to
23   transactions that can be initiated by an accountholder via an online or mobile banking
24   platform, such as *outgoing* wire transfers and incoming or outgoing *ACH*
25   *transactions*.  Thus, only fees for those types of transactions appear within the Online
26   Banking Agreement—not fees for transactions such as incoming wire transfers that
27   cannot be initiated on those platforms.  *See* Compl., Ex. 3 at Section 1 ("This
28   Agreement governs your use of any *online or mobile banking services* maintained by

Bank of America") (emphasis added).  Plaintiff himself acknowledges that "[t]he Online [Banking] Agreement governs the use of [BANA]'s online or mobile banking services" and that the section on "ACH and Wire Transfers" covers only "inbound and outbound ACH transfers and *outbound* domestic or international wire transfers." *Id.* ¶ 19 (citing Compl., Ex. 3) (emphasis added).  Likewise, the Wire Transfer FAQs—located online and on the mobile banking platform—only provides information related to how to "*send* a domestic or international wire transfer."  *Id.*, Ex. 4 ("Fees and limits may apply, depending on your account type and the type of wire.  You will be able to review any fees and limits *before completing your wire transfer in Online Banking*.") (emphasis added).

Second, *even if* the Online Banking Agreement did apply to incoming wire transfers (it does not), the omission of incoming wire transfer fees from that document does not change the fact that BANA discloses incoming wire transfer fees in the applicable Account Documents—the Deposit Agreement and Personal Schedule of Fees.  It also does not strip BANA of its contractual authority to assess such fees, because, under California law, when several contracts relating to the same subject matter are executed by the same parties, the contracts are "considered together as if contained in a single document." *Ramirez v. Baxter Credit Union*, 2017 WL 118859, at *3 (N.D. Cal. Jan. 12, 2017) (citation omitted).  Indeed, "[u]nder California law, parties may validly incorporate by reference into their contract the terms of another document." *Slaught v. Bencomo Roofing Co.*, 25 Cal. App. 4th 744, 748-49 (1994).  Here, the Online Banking Agreement incorporates by reference both the Deposit Agreement and Personal Schedule of Fees.  *See* Compl., Ex. 3 at 2.  Thus, read "as a whole," BANA's Account Documents plainly authorize BANA to charge incoming wire transfer fees.  *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 18-19 (1995) ("[L]anguage in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract.  Courts will not strain to create an ambiguity where none exists.") (citations omitted).

Because BANA's Account Documents expressly permit incoming wire transfer fees and Plaintiff identifies no contractual provision to the contrary, Plaintiff has not (and cannot) plausibly allege that any breach occurred.  As such, Plaintiff's breach of contract claim must be dismissed.  *See Zamora v. Solar*, 2016 WL 3512439, at *3 (C.D. Cal. June 27, 2016) ("The Court agrees with Defendant's plain reading of the Agreement, and joins its sister courts in the California system in holding that a party cannot breach a contract if its [conduct] was expressly permitted by the contract's terms."); *Carma Devs. (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992) ("[I]f defendants were given the right to do what they did by the express provisions of the contract there can be no breach.").

## II. <u>Plaintiff's Remaining Claims Are Merely Attempts to Rehash The Failed Breach of Contract Claim And Must Be Dismissed.</u>

Each of Plaintiff's remaining claims are premised on the same allegation underlying his breach of contract claim:  that BANA improperly assessed incoming wire transfer fees.  Accordingly, each of these claims must be dismissed.

In Count II, Plaintiff alleges that BANA "breached the implied covenant of good faith and fair dealing by, *inter alia*, charging undisclosed incoming wire transfer fees," and seeks damages for these fees.  Compl. ¶¶ 65-66.  Because Plaintiff's implied covenant claim cites the "same underlying breach" as his claim for breach of contract and seeks the same relief, it is impermissibly "superfluous" and should be dismissed.  *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal. 2014); *accord Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990) ("If the allegations [for breach of the implied covenant] do not go beyond the statement of a mere contract breach and, relying on the same alleged acts, simply seek the same damages or other relief already claimed in a companion contract cause of action, they may be disregarded as superfluous as no additional claim is actually stated."); *Malcolm v. JPMorgan Chase Bank, N.A.*, 2010 WL 934252, at *6 (N.D. Cal. Mar. 15, 2010) (same).

1    In Count III, Plaintiff alleges that BANA was unjustly enriched "[b]ecause
2  Plaintiff and Class Members paid incoming wire transfer fees."  Compl. ¶ 69.  But
3  "[u]njust enrichment is an action in quasi-contract, which does not lie when an
4  enforceable, binding agreement exists defining the rights of the parties."  *Schertzer*
5  *v. Bank of America, N.A.*, 489 F. Supp. 3d 1061, 1076 (S.D. Cal. 2020) (quoting
6  *Paracor Fin., Inc. v. GE Cap. Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996)).  Thus,
7  before analyzing the elements of an unjust enrichment claim, the court "must satisfy
8  itself that no contract already governs the relevant relationship between the parties."
9  *Schertzer*, 489 F. Supp. 3d at 1077.  Here, Plaintiff admits that his relationship with
10  BANA is governed by the Account Documents.  Compl. ¶ 15.  Accordingly the unjust
11  enrichment claim must be dismissed.  *See Schertzer*, 489 F. Supp. 3d at 1077
12  (dismissing unjust enrichment claim regarding defendant's assessment of ATM fees
13  because the dispute was covered by "a valid and enforceable written agreement"); *In*
14  *re Facebook PPC Adver. Litig.*, 709 F. Supp. 2d 762, 770 (N.D. Cal. 2010)
15  (dismissing unjust enrichment claim premised on same allegations as a breach of
16  contract because the remedy "applies only in the absence of an adequate remedy at
17  law" ).

18    In Count IV, Plaintiff alleges that as a result of assessing incoming wire
19  transfer fees, BANA "has in its possession money which, in equity, belongs to
20  Plaintiff and the Class Members" in violation of the money had and received doctrine.
21  Compl. ¶¶ 71-72.  But where, as here, the relationship between the parties is governed
22  by an express contract, a claim for money had and received will not lie unless there
23  has been "total failure of consideration."  *Rutherford Holdings, LLC v. Plaza Del*
24  *Rey*, 223 Cal. App. 4th 221, 230 (2014).  Plaintiff does not (and cannot) allege any
25  (let alone a total) failure of consideration here.  To the contrary, Plaintiff's entire
26  theory is premised on the allegation that the Account Documents are enforceable.
27  *See* Compl. ¶ 15.  Accordingly, because "there is an enforceable, binding agreement
28  that exists to define the rights of the parties," and Plaintiff's "claim for money had

1   and received is based on the same facts as his claim for breach of contract," he "fails

2   to allege facts sufficient for an independent remedy in quasi-contract." *Friedman v.*

3   *U.S. Bank Nat'l Ass'n*, 2016 WL 3226005, at *8 (C.D. Cal. June 6, 2016) (citation

4   omitted).  The claim for money had and received thus should be dismissed.

5         In Count V, Plaintiff alleges that by assessing incoming wire transfer fees,

6   BANA engaged in conversion because it "received profits to which it was not entitled

7   at the expense of Plaintiff and the Class Members."  Compl. ¶ 74.  The conversion

8   claim is barred by the economic loss doctrine.  Under the doctrine, "[a] person may

9   not ordinarily recover in tort for the breach of duties that merely restate contractual

10  obligations." *Motivo Eng'g, LLC v. Black Gold Farms*, 2022 WL 3013227, at *4

11  (C.D. Cal. June 27, 2022) (citation omitted).  Where, as here, "the ownership interest

12  that formed the basis for the conversion claim [] arises from the contract," the claim

13  is barred by the economic loss rule.  *Id.*; *Durkee v. Bank of America, N.A.*, 2020 WL

14  4500607, at *4 (S.D. Cal. Aug. 5, 2020) (dismissing conversion claim that "relie[d]

15  on the same factual allegations as [the plaintiff's] breach of contract claim"); *Lum v.*

16  *Merlin Ents. Grp. U.S. Holdings Inc.*, 2023 WL 2583307, at *6, *13 (S.D. Cal. Mar.

17  20, 2023) (dismissing conversion claim where the claim "fails to assert damages

18  beyond the contract").

19        In Count VI, Plaintiff alleges that BANA violated the UCL through its

20  "misrepresentations and omissions about its fee policies related to incoming wire

21  transfers" and "fail[ure] to disclose the amount of the incoming wire transfer fee or

22  the conditions under which the fee is imposed in its contracts."  Compl. ¶¶ 81-82.

23  But it is well settled that, absent factual allegations of conduct beyond a mere breach

24  of contract, Plaintiff cannot state a claim for violation of the UCL.  *See, e.g.*, *Caltex*

25  *Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1161 (9th Cir. 2016)

26  (affirming dismissal of UCL claim based on factual allegations amounting to nothing

27  more than breach of contract); *Forever 21, Inc. v. Nat'l Stores Inc.*, 2014 WL 722030,

28  at *5 (C.D. Cal. Feb. 24, 2014) (dismissing UCL claim where "the allegations are

9

merely a repackaged version of . . . [a] defective breach-of-contract claim");
*Sybersound Recs., Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008)
(dismissing UCL claim where plaintiff's claim amounted to a breach of contract and
plaintiff "ha[d] not pled that the breaches of contract [were] independently unlawful,
[or] unfair"); *Nuvo Rsch. Inc. v. McGrath*, 2012 WL 1965870, at *6 (N.D. Cal. May
31, 2012) (dismissing UCL claim that was "predicated solely on rights emanating
from the [parties'] Agreement").  This claim therefore must be dismissed.

Finally, in Count VII, Plaintiff alleges that BANA violated the FAL when it
"misrepresented its true fee policies and failed to accurately disclose that Plaintiff
and Class Members could be charged $15 fees for incoming wire transfers" and
disseminated those misrepresentations "*through Bank of America's contracts and
other disclosures*."  Compl. ¶¶ 92-93 (emphasis added).  This claim fails for the
simple reason that the FAL does not apply to statements made in contracts.  *Lit'l
Pepper Gourmet, Inc. v. Airgas USA, LLC*, 2019 U.S. Dist. LEXIS 203437, at *14
(S.D. Cal. Nov. 21, 2019) ("Although the definition of 'advertising' in section 17500
is expansive and includes 'any [ ] manner or means whatsoever, . . . [the statute] as a
whole clearly refers to advertising,' *not to contracts*.") (emphasis added) (citation
omitted).

At bottom, Plaintiff's claims in Counts II-VII are merely repackaged versions
of Plaintiff's defective breach of contract claim.  Each of these claims must be
dismissed.

**III.  Plaintiff's Remaining Claims Fail for Additional Reasons.**

Even if Plaintiff's remaining claims were premised on more than mere
breaches of contract (they are not), those claims fail for the additional, independent
reasons described below.

**A.  Plaintiff Does Not State a Claim for Breach of the Implied
Covenant of Good Faith and Fair Dealing (Count II)**

Plaintiff alleges that BANA breached the implied covenant of good faith and

fair dealing when it "charg[ed] undisclosed incoming wire transfer fees." Compl. ¶ 65. But Plaintiff cannot use the implied covenant to override the express provisions in the Account Documents *allowing* incoming wire transfer fees. *See Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 349 (2000) (The covenant exists "to prevent one contracting party from unfairly frustrating the other party's right to receive *the benefits of the agreement actually made*.") (emphasis in original). This is because the implied covenant "cannot be endowed with an existence independent of its contractual underpinnings." *Lenk v. Monolithic Power Sys., Inc.*, 2015 WL 7429498, at *3 (N.D. Cal. Nov. 23, 2015) (citation omitted). Nor can the implied covenant "impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement." *Guz*, 24 Cal. 4th at 349-50; *Racine & Laramie, Ltd., Inc. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1032 (1992) (same). Accordingly, because the Account Documents granted BANA the authority to assess incoming wire transfer fees, this claim fails.

**B.     Plaintiff Does Not State a Claim for Unjust Enrichment (Count III)**

Plaintiff alleges that BANA was unjustly enriched because by wrongfully assessing incoming wire transfer fees, "Bank of America unjustly received profits at the expense of Plaintiff and the Class Members." Compl. ¶ 68. As an initial matter, "most California courts agree that there is no cause of action in California for unjust enrichment." *Lopez v. Wash. Mut. Bank, F.A.*, 2010 WL 1558938, at *11 (E.D. Cal. Apr. 19, 2010) (citing cases); *accord Bosinger v. Belden CDT, Inc.*, 358 F. App'x 812, 815 (9th Cir. 2009) ("In California there is no cause of action for unjust enrichment"). That is because "[u]njust enrichment is a general principle, underlying various legal doctrines and remedies, rather than a remedy itself." *Lopez*, 2010 WL 1558938, at *11 (citation omitted).

Even if this Court were to recognize an unjust enrichment claim, Plaintiff fails to state a claim. To successfully plead an unjust enrichment claim, a plaintiff must

demonstrate the "receipt of a benefit and [the] unjust retention of the benefit at the expense of another." *Kahn Creative Partners, Inc. v. Nth Degree, Inc.*, 2011 WL 1195680, at *9 (C.D. Cal. Mar. 29, 2011) (citation omitted).  However, "the mere fact that a person benefits another is not of itself sufficient to require the other to make restitution therefor." *Lopez*, 2010 WL 1558938, at *10 (citation omitted).  Rather, the plaintiff "must show that a benefit was conferred on the defendant through mistake, fraud, coercion, or request." *Schertzer*, 489 F. Supp. 3d at 1076.

Here, Plaintiff has not (and cannot) plead any plausible mistake, fraud, coercion or request through which incoming wire transfer fees were paid because BANA's Account Documents unequivocally permit BANA to assess incoming wire transfer fees and BANA therefore was entitled to those fees.  *See supra* Section I; *Lopez*, 2010 WL 1558938, at *10 ("The complaint's unjust enrichment claim fails because the complaint fails to state any facts in support of the contention that Defendants received and retained benefits and payments to which they were not entitled."); *Khomich v. Bank of America, N.A.*, 2011 WL 1087858, at *9 (E.D. Cal. Mar. 23, 2011) (same).  As a result, Plaintiff has not stated a claim for unjust enrichment.

## C.      Plaintiff Does Not State a Claim for Money Had and Received (Count IV)

In his claim for money had and received (Count IV), Plaintiff alleges that because BANA assessed incoming wire transfer fees, "[BANA] has obtained money from Plaintiff and the Class Members by the exercise of undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact." Compl. ¶ 71.  To state a claim for money had and received, a plaintiff must plausibly allege that (1) the defendant received money that was intended to be used for the benefit of the plaintiff; (2) the money was not used for the benefit of the plaintiff; and (3) the defendant has not given the money to the plaintiff. *Gilbert v. Chase Home Fin. LLC*, 2013 WL 3968229, at *8 (E.D. Cal. July 31, 2013).  A claim for money had and

received is not a standalone claim but rather a "common count," which is used as "an alternative claim seeking the same recovery demanded in a cause of action based on the same facts." *Compliance Servs. of America, LLC v. Houser Holdings, LLC*, 2013 WL 4169119, at *7 (N.D. Cal. Aug. 9, 2013). Accordingly, a claim for money had and received will not survive if the underlying causes of action on which it is premised do not survive. *See McBride v. Boughton*, 123 Cal. App. 4th 379, 394 (2004); *Mar Partners 1, LLC v. Am. Home Mortg. Servicing, Inc.*, 2011 WL 11501, at *4 (N.D. Cal. Jan. 4, 2011).

Here, Plaintiff's claim for money had and received is duplicative of his unjust enrichment and conversion claims. *See* Compl. ¶¶ 68-69 (alleging that BANA engaged in unjust enrichment when it "unjustly received profits at the expense of Plaintiff and the Class Members"); *id.* ¶¶ 71-72 (alleging that BANA violated the money had and received doctrine when it "obtained money from Plaintiff and the Class Members by exercise of undue influence, menace or threat, compulsion or duress, and/or mistake of law and/or fact" and as a result, "has in its possession money which, in equity, belongs to Plaintiff and the Class Members"); *id.* ¶ 74 (alleging that BANA engaged in conversion when, as a result of assessing incoming wire transfer fees, it "received profits to which it was not entitled at the expense of Plaintiff and the Class Members"). Plaintiff's claim for money had and received therefore fails along with the unjust enrichment and conversion claims.

**D.    Plaintiff Does Not State a Claim for Conversion (Count V)**

Plaintiff claims that by assessing incoming wire transfer fees, "[BANA] received profits to which it was not entitled at the expense of Plaintiff and the Class Members" and that "[b]y retaining these profits for itself, [BANA] has maintained wrongful possession and control over Plaintiff's and the Class Members' property." Compl. ¶¶ 74, 75. To state a claim for conversion, or "the wrongful exercise of dominion over the property of another," a plaintiff must plausibly allege (1) "the plaintiff's ownership or right to possession of the property at the time of the

conversion," (2) the defendant's "wrongful act or disposition of property rights" to assume control or ownership of the property or apply it to the defendant's own use, and (3) damages. *Farmers Ins. Exch. v. Zerin*, 53 Cal. App. 4th 445, 451-52 (1997).

This claim fails because it is well-settled under California law that fees assessed in connection with funds transferred or deposited into a deposit account may not be the subject of conversion. *See, e.g.*, *Schertzer*, 445 F. Supp. 3d at 1093 (dismissing claim premised on ATM fees charged by bank because "[a]ny money became the literal property of BofA upon deposit in the bank and not subject to a claim of conversion" and thus "[a]ny injuries or losses the Plaintiffs have allegedly suffered are a result of their pre-existing contractual agreement with BofA, the bank into which they deposited their funds") (citation omitted); *Gutierrez v. Wells Fargo Bank N.A.*, 622 F. Supp. 2d 946, 956 (N.D. Cal. 2009) ("A bank may not be sued for conversion of funds deposited with the bank."); *Lawrence v. Bank of America,* 163 Cal. App. 3d 431, 437 n.2 (1985) ("money on deposit with a bank may not be the subject of conversion.") (citation omitted); *Chavez v. Bank of America Corp.*, 2012 WL 1594272, at *11 (N.D. Cal. May 4, 2012) ("California law is well-settled in this area that a claim against the bank for conversion will not lie.").

Even if conversion did apply to Plaintiff's allegations (it does not), Plaintiff has not and cannot plausibly allege that BANA obtained the incoming wire transfer fees by a "wrongful act" because those fees were expressly permitted by the Account Documents. *See supra* Section I; *Durkee v. Bank of America*, *N.A.*, 2020 WL 4500607, at *4 (S.D. Cal. Aug. 5, 2020) ("The court has already determined that Bank of America's assessment of the [international transaction fee] was within the terms of the contract so Plaintiff cannot allege that the fee was obtained 'by a wrongful act.'"). As such, Plaintiff's conversion claim must be dismissed.

### E.    Plaintiff Does Not State a Claim Under the UCL (Count VI) or the FAL (Count VII)

Plaintiff asserts claims under the "unlawful" and "unfair" prongs of the UCL

and under the FAL.  Compl. ¶¶ 81-83, 90-95.  Plaintiff's UCL and FAL claims fail because: (1) Plaintiff has an adequate remedy at law; and (2) Plaintiff does not plead facts sufficient to state a UCL or FAL claim.

### 1.    Plaintiff Has An Adequate Remedy at Law.

"As the California Supreme Court recently confirmed, 'civil causes of action authorized by the UCL and FAL must properly be considered equitable, rather than legal, in nature.'"  *Williams v. Apple, Inc.*, 2020 WL 6743911, at *9 (N.D. Cal. Nov. 17, 2020) (quoting *Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda Cty.*, 9 Cal. 5th 279, 326 (Cal. 2020)).  "One limit on a federal court's equitable powers is that 'equitable relief is not appropriate where an adequate remedy exists at law.'"  *Id.* (citing *Schroeder v. United States*, 569 F.3d 956, 963 (9th Cir. 2009)).  Thus, a plaintiff "must establish that []he lacks an adequate remedy at law before securing equitable restitution for past harm."  *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *Williams*, 2020 WL 6743911, at *9 ("[A] federal court cannot grant relief under the UCL or FAL if Plaintiffs have an adequate remedy at law").

Where, as here, Plaintiff seeks money damages under "claims for breach of contract or breach of the implied covenant of good faith and fair dealing, []he has an adequate remedy at law."  *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016);  *Williams*, 2020 WL 6743911, at *10 ("[T]he Court must dismiss Plaintiffs' FAL and UCL claims, which necessarily seek equitable relief, because Plaintiffs' breach of contract claim provides an adequate remedy at law.").  This "is the case even if all of [Plaintiff's] [underlying] claims ultimately fail." *Moss*, 197 F. Supp. 3d at 1203.

Plaintiff's claim for "public injunctive relief" (*see* Compl. ¶ 87) does not change this result as "Plaintiffs are required to allege that they lack an adequate remedy at law in order to seek injunctive relief."  *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020) (citing numerous cases); *Kumar*

*v. Ally Fin. Inc.*, 2022 WL 16962283, at *4 (C.D. Cal. Oct. 17, 2022) (just because a plaintiff "is also seeking injunctive relief … does not absolve him of the initial requirements for seeking equitable relief — i.e. that Plaintiff lacks an adequate remedy at law").   Accordingly, the Court should dismiss Plaintiff's UCL and FAL claims with prejudice.  *See Gomez v. Jelly Belly Candy Co.*, 2017 WL 8941167, at *1 (C.D. Cal. Aug. 18, 2017) (dismissing FAL and UCL claims because plaintiff failed to allege lack of an adequate remedy under the law).

> 2.   Plaintiff Has Not Properly Pled a Claim Under Any Prong of the UCL or the FAL.

Dismissal of the UCL and FAL claims is also warranted because Plaintiff has not plausibly alleged that there was anything "unlawful" or "unfair" about BANA's practice of charging incoming wire transfer fees, or that BANA made any misrepresentation.

As to the "unlawful" UCL claim, Plaintiff cannot state a claim under any predicate law, and so, this claim must be dismissed.  "Section 17200 'borrows' violations from other laws by making them independently actionable as unfair competitive practices."  *Nikoopour v. Ocwen Loan Servicing, LLC*, 2018 WL 3007918, at *5 (S.D. Cal. June 14, 2018) (citation omitted).  "If a plaintiff cannot state a claim under the predicate law, however, [the UCL] claim also fails."  *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1094 (N.D. Cal. 2017) (citation omitted). Plaintiff alleges that BANA violated the UCL's unlawful prong insofar as BANA allegedly violated the FAL by "provid[ing] misleading information to Plaintiff and Class Members regarding its true fee practices."  Compl. ¶ 81.  Plaintiff's failure to state a claim under the FAL, as discussed in this Section *infra*, requires dismissal of Plaintiff's "unlawful"  UCL claim.  *See Nikoopour*, 2018 WL 3007918, at *5 (dismissing UCL claim premised on failed breach of contract claim); *Hadley*, 243 F. Supp. 3d at 1094-95 (dismissing UCL claim where plaintiff failed to adequately allege any predicate violation).

Plaintiff also premises his "unlawful" UCL claim on BANA's alleged violation of the Truth In Savings Act ("TISA").  Compl. ¶ 82 (alleging BANA violated TISA because BANA "both fails to disclose the amount of the incoming wire transfer fee or the conditions under which the fee is imposed in its contracts"). This claim fails because Plaintiff has not (and cannot) plausibly state a claim for an underlying TISA violation.  Contrary to Plaintiff's assertions, TISA does not require the disclosure of an exact fee amount so long as the bank discloses "an explanation of how the fee will be determined" and "the conditions under which the fee may be imposed."  12 C.F.R. § 1030.4(b)(4).  Here, BANA makes those disclosures in its Account Documents.  *See* Compl., Ex. 1, at 67.  Plaintiff's UCL claim predicated on a purported TISA violation therefore fails.  *See Rodrigues v. Alliant Credit Union*, 2022 WL 2390999, at *14 (N.D. Cal. July 1, 2022) (dismissing claim where "[plaintiff] has failed to state an underlying TISA violation that supports a UCL 'unlawfulness' claim").

As to the "unfair" UCL claim, Plaintiff fails to plausibly allege that BANA's conduct "offends an established public policy" or "is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Chavez v. Carmax Auto Superstores Cal., LLC*, 2013 WL 12474697, at *6 (C.D. Cal. Sept. 10, 2013).  "[A]n act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided."  *Schertzer*, 445 F. Supp. 3d at 1091.  The inquiry is governed by the "reasonable consumer test" which "requires that [a] plaintiff demonstrate more than the mere possibility that the provisions of the Agreement 'might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner.'"  *Id.* at 1086-87 (quoting *Ebner v. Fresh*, 838 F.3d 958, 965 (9th Cir. 2016)).  Here, Plaintiff's conclusory allegation that "Bank of America's unfair business practices as alleged herein are immoral, unethical, oppressive, unscrupulous, unconscionable, and/or substantially injurious" is nothing more than

the mere "stringing together of a handful of adjectives to describe [defendant's] behavior" and does not state a claim.  *Schertzer*, 445 F. Supp. 3d at 1091.

Moreover, as demonstrated above, BANA's Account Documents put Plaintiff on notice that incoming wire transfers are subject to fees, that this fee varies, and that accountholders can contact BANA to ascertain the exact fee that would apply to a particular transaction.  *See supra* Section I.  Conduct cannot be "unfair" under the UCL if it was permitted by the plain terms of the parties' contract, as "the unfairness prong of [the UCL] does not give the courts a general license to review the fairness of contracts."  *Roots Ready Made Garments Co.*, *W.L.L. v. Gap, Inc.*, 405 F. App'x 120, 122–23 (9th Cir. 2010) (quotations and citations omitted); *Quattrocchi v. Allstate Indem. Co.*, 2018 WL 347779, at *2 (E.D. Cal. Jan. 9, 2018), *aff'd*, 775 F. App'x 330 (9th Cir. 2019).  Accordingly, Plaintiff's "unfair" UCL claim should be dismissed.  *See, e.g.*, *Schertzer*, 445 F. Supp. 3d at 1087 (dismissing "unfair UCL claim; "[b]ecause the possibility of being charged a balance inquiry fee has been disclosed, the UCL claim lacks merit" and "[d]isclosure of this information would not lead the hypothetical reasonable consumer to conclude that no [such] fees would be charged"); *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1170-71 (9th Cir. 2012) (affirming dismissal where "nothing in the FAC supports the conclusion that the advertisements were against public policy, immoral, unethical, oppressive, or unscrupulous," the advertisements at issue warned that "other restrictions might apply," and the at-issue annual fee was disclosed during the application process).

Plaintiff likewise fails to plausibly allege a violation of the FAL.  Under the FAL, it is unlawful for any person to "induce the public to enter into any obligation" based on a statement that is "untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."  *Davis,* 691 F.3d at 1161.  To determine whether an advertisement is misleading, the court must evaluate the advertisement under a "reasonable consumer standard," where a plaintiff must "show that members of the public are likely to be deceived."  *Williams*

1    *v. Gerber Prods. Co.,* 552 F.3d 934, 938 (9th Cir. 2008). Here, Plaintiff's claim fails

2    because Plaintiff has not, and cannot, plausibly allege any affirmative

3    misrepresentations regarding BANA's practice of assessing incoming wire transfer

4    fees that would be likely to deceive a reasonable consumer in light of the disclosures

5    about this fee in its Account Documents. *See supra* Section I; *Larin v. Bank of*

6    *America, N.A.*, 617 F. App'x 651, 652 (9th Cir. 2015) (dismissing claim where "Bank

7    of America's Overdraft Protection Program contains "no affirmative

8    misrepresentations . . . that would likely deceive a reasonable consumer" and the

9    Program "worked in the manner disclosed in the Deposit Agreement"); *Janda v. T-*

10   *Mobile, USA, Inc.*, 2009 WL 667206, at *21 (N.D. Cal. Mar. 13, 2009) (dismissing

11   claim where the terms and conditions "disclose[d] the fact that [defendant] would

12   charge [certain] fees, that they are discretionary, and that they might increase at any

13   time without notice).

14       Because Plaintiff fails to state a claim under either the UCL or the FAL, Counts

15   VI and VII must be dismissed.[3]

16                          **<u>CONCLUSION</u>**

17       For all the foregoing reasons, BANA respectfully requests that the Court

18   _____

19   [3] Even if this Court were to find that Plaintiff stated a UCL or FAL claim (he has
     not), Plaintiff lacks standing to seek prospective injunctive relief under either claim.
20   Under Rule 12(b)(1), a party may move to dismiss relief sought by a plaintiff based
     on lack of Article III standing, because "[s]tanding must be shown with respect to
     each form of relief sought, whether it be injunctive relief, damages or civil penalties."
21   *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (citation
     omitted). Here, Plaintiff has not demonstrated a likelihood that he will suffer a
22   repeated injury as a result of BANA's alleged conduct, and nor can he as he
     admittedly "now know[s]" of the incoming wire transfer fee. *See Schertzer*, 445 F.
23   Supp. 3d at 1075 (dismissing claims for injunctive relief under UCL and FAL where
     plaintiffs "failed to adequately allege an actual or imminent risk of future harm …
24   knowing the information that they now know"); *accord Freeman v. ABC Legal
     Servs., Inc.*, 877 F. Supp. 2d 919, 928-29 (N.D. Cal. 2012) (dismissing claim for
25   injunctive relief under the UCL where named plaintiffs failed to "allege[] any facts
     to show that they personally have a reasonable threat of facing future [harm]");
26   *Ketayi v. Health Enrollment Grp.*, 516 F. Supp. 3d 1092, 1129 (S.D. Cal. 2021)
     (dismissing claim for injunctive relief under the UCL and FAL where "Plaintiffs []
27   have not alleged that they, as opposed to unnamed other consumers, face a threat of
     future harm from Defendants' business practices). Accordingly, should this Court
28   find that Plaintiff stated a UCL or FAL claim, Plaintiff's claims for injunctive relief
     should be dismissed.

1 | dismiss the Complaint in its entirety with prejudice.

2

3

4 | Dated:  September 7, 2023                    Respectfully submitted,

5

6 | By: /s/ *Laura A. Stoll*

7 |     LAURA A. STOLL
      *LStoll@goodwinlaw.com*

8 |     **GOODWIN PROCTER LLP**
      601 S. Figueroa Street, 41st Flr.

9 |     Los Angeles, CA  90017
      Tel:  +1 213 426 2500
      Fax: + 1 213 623 1673

10

11 |    Attorneys for Defendant
      BANK OF AMERICA, N.A.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Bank of America, N.A., certifies that this brief contains 6,752 words, which complies with the word limit of L.R. 11-6.1.

Executed:  September 7, 2023               /s/ Laura A. Stoll

1

## **CERTIFICATE OF SERVICE**

2

      I hereby certify that I electronically filed the foregoing with the clerk of the

3

court for the United States District Court for the Central District of California by

4

using the CM/ECF system on September 7, 2023.  I further certify that all

5

participants in the case are registered CM/ECF users and that service will be

6

accomplished by the CM/ECF system. I certify under penalty of perjury that the

7

foregoing is true and correct.

8

9

  Executed:  September 7, 2023       /s/ *Laura A. Stoll*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28